Next case is United States of America v. Dion Dakota Johnson. I would like to reserve four minutes for rebuttal. That request will be granted. Thank you. The district court abused its discretion in at least two ways in denying Mr. Johnson's request to expand the time for filing his 2255 motion without an evidentiary hearing. First, it failed to address at all whether the motion would have been timely under section 2255F4, which permits filing the motion within one year from the date the movement discovers, through the exercise of due diligence, the factual basis for the claim. Here, Mr. Johnson's attorney's failure to file his appeal. Second, it failed to give fair consideration to his equitable tolling claim, requiring him to shoulder the burden of persuasion without full factual development, which this court's cases do not require, and also ignoring critical facts in support of equitable tolling, including his efforts at communicating with his counsel. Let me ask you a question at the very beginning here. You referred to it as Mr. Johnson's 2255 motion, but in effect, this wasn't a 2255 motion. This was a motion for leave to file a 2255 motion, was it not? That's correct. He styled it as a motion to expand the time for filing his 2255 motion. However, he also did allege the basis for his 2255 in that motion. As far as Section 2255 and its various subsections are concerned, is there a difference between a motion under 2255 and a motion for leave to file 2255? I think that's a good question, and I think that that's probably an issue of first impression. I haven't been able to find any cases that address whether the standard under 2255B would apply to the motion for expansion of time as it applies to the 2255 motion itself. However, I think— Doesn't that really—doesn't that difference itself go to the crux of the question here? Because the crux here is you're saying that the district court should have provided a hearing. And when I look at the statute itself, at least there's an argument to be made that the 2255B language may not at least directly apply to the motion that your client filed in this case. I think there are two responses to that. The first is that the very same substantive issues that would be litigated in a 2255 motion itself, that is, whether the statute of limitations was told either under F-4 or by virtue of equitable tolling, are being litigated here in the motion to expand time for filing. And so the idea that a different standard should apply just because the pro se petitioner styled the motion differently doesn't really make any logical sense. Well, it's not just because he styled it differently. He, to his credit, recognized that he couldn't file a 2255. He was out of time. He needed leave to file a 2255. He didn't just, you know, make kind of a random choice. He made a logical decision based on what he understood his obligations were. So the question still stands, as Judge Fischer put it to you, does 2255B's low bar help you in this setting where the question isn't 2255 merits, it's whether you can even make a 2255 motion. But this court and other courts have accepted 2255 petitions that are filed and allege the new statute of limitations that essentially allege I've discovered a new fact or I'm entitled to equitable tolling at the same time. And, in fact, the cases that we cite with regard to the F-4 statute of limitations from other jurisdictions are 2255s that are filed and that allege a new statute of limitations should apply in my case because I've just discovered that my attorney did not file the appeal. And so the second argument that I would make, if the court does not accept the first argument that B should apply in a motion setting as opposed to a 2255 setting, is that the district court should have construed this filing as a 2255 under the liberal construction rules that apply to pro se petitioners. Because he did allege in that first filing in January of 2012 that the substantive claim that my attorney failed to file my appeal. So it's sort of a semantic dispute, I guess, almost, because at some point the trial court needs to ascertain whether he can get in the courthouse door. That's probably a better way to put it, Judge Hardiman. And your argument, as I understand it, is the trial judge couldn't determine whether your client was entitled to get in the courthouse door without a hearing. That's right. And that's what the court in Long said, is that in assessing a 2255 petition by a pro se petitioner, the court is required to assess all of the claims, the tolling claims as well as the substantive claims. But your client needs to give the district court something, right? I mean, it couldn't just send a piece of paper saying, you know, I shouldn't be here, let me out. That wouldn't entitle him to a hearing. Obviously would not. All right. Well, here we know that the docket sheet was sent to him in October 2010. Did he receive that? We don't know if he received that. Well, isn't that his burden to plead? I didn't get it. I mean. Well, so that assumes that receiving a docket sheet is enough information for a pro se petitioner to determine whether or not an appeal has been filed on his behalf. Well, that might be a subsidiary issue, but it seems to me his first obligation is to tell the trial. He can't play hide the ball here and expect a hearing. So did he get the sheet or not? Then, you know, if he got it, then I guess the question becomes, didn't he read it and see that no appeal had been filed? And if he didn't get it, then why did he wait until August 2011 to make his next move? Well, so it's not clear that he waited until August 2011 to make his next move. The allegations include that a docket sheet was requested in 2010, that there were attempts made to phone the attorney, that there were attempts made to write the attorney, both by Mr. Johnson and by his girlfriend, that there were attempts made to contact the Court of Appeals, both by Mr. Johnson and by his girlfriend, that during the period of time from 2010 through 2011, he was on medication for mental illnesses, that he suffered from neurological deficits that had been diagnosed and reported in the pre-sentence report, that he was uneducated, that he was proceeding all by himself except for the assistance of his girlfriend. And so the docket sheet itself is relevant in that it shows some effort to keep up with his case. But I think it's fair to say... And that helps him. Which I think is helpful. But it also might hurt him if he got it. But it's not dispositive for two reasons. The first reason is that it's not clear any lay person would know that a notice of appeal is recorded on a district court docket sheet. In fairness, I think many of us did not know that even after we graduated from law school. Wasn't he actually starting to do things after he... Are you saying it was just coincidental that he started doing stuff following his receipt of the docket sheet? Or did the docket sheet prompt action on his part? Well, to be clear, I don't think this record establishes when he took any of those actions. And that's part of the reason an evidentiary hearing should have been conducted in this case. All right. That argument has some force with me. However, and I think it's a big however, I'm personally concerned about setting a precedent that would give every putative petitioner a ticket to an evidentiary hearing through nebulous, vague pleading. So would you address that concern for me? I think that's a fair concern. And there are a couple of responses to that. I think the first response is that there are relatively few failure to appeal cases. And I think it's important to put this case into that context. That doesn't answer the main point, which is if we get a ruling or your client gets a ruling, we'll have a whole lot more failure to file cases. That's the concern. Well, but in a failure to file case, you have to be able to demonstrate that there was not an appellate waiver in your case, which there was not in this case. And that you have to be able to make the allegations that were made in this case, that you requested an appeal, that you received some assurance. And how does a failure to appeal case impact this question? It impacts the question because it's a special kind of attorney misconduct that gets you. You're a step beyond where this argument is. The question is whether he was timely. You've got to get past the question of whether he was timely. The fact that you posited the answer that a failure to appeal shortens Judge Hardiman's list of free tickets. All a failure to appeal does is extend the date of the final judgment. Here, the final judgment, since there was no appeal, was May of 2010, the end of April 2010. Let me clarify the point and then I'll move on because there are other answers as well. But the point that I was trying to make is that in a failure to appeal case, prejudice will be presumed. And so there will be no other allegations that will have to be judged by the district court that could kick the case out of court irrelevant of the statute of limitations question, which is frequently the case for other 2255 petitioners. So there will be other ways that the floodgates will be narrowed with respect to whether an evidentiary hearing is warranted or not in those other cases. But returning to the question of cases in which there should be an evidentiary hearing on a statute of limitations question, I think that the issue is, does the record support the allegations that are being made by the petitioner? And are the allegations being made by the petitioner sufficiently detailed? What is the record support here? The record support here is there's significant record support. This isn't the first thing. Stop here. Stop. This isn't the first thing. When Judge Caputo looked at the record, wasn't the first thing he looked at? There was no appeal, date of final order, conclusion was 12 months was up in April 2011. Which was incorrect to begin with. Okay. May 2011. Give him another 30 days. May 2011. Isn't that the first thing that shows? That's the first thing that shows. He looks at his clock and he says, whoop, this is past May 2011. Where do you go from there? Where do you go that's – what is it that you showed that you get into those words conclusively show that you were entitled to relief? No. The record must – Conclusively show no relief. Right. So the standard under 2255B is that we're entitled to a hearing if the record does not conclusively show that we are not entitled to relief. I apologize, Your Honor. I apologize. We can do that, but you can't. I apologize. Tell me what next is shown.  Go to the next point. Very well, Your Honor. He gave witnesses who would testify on his behalf as to the contacts that were attempted to be made with his lawyer, to which his lawyer did not respond, himself and his girlfriend. What's that have to do with the 2255? It has to do with his attempts to find out whether his appeal was filed. And under 2255F4, which I think it's important to note, Judge Caputo did not even address that argument for tolling of the statute of limitations. The statute of limitations is renewed. It's triggered anew as of the date that he – that a reasonable person in his circumstances would have learned that the appeal was not filed. There's a due diligence component to that as well, right? There is. And in footnote 14 of your brief, you seem to draw a distinction between the standard for due diligence under 2255F4 and under the doctrinal – the equitable doctrine of tolling. Is your position that it's easier to show due diligence under the equitable doctrine? I don't know that it's easier to show. The standard under – Well, what's the difference? The difference is that the standard under F4 is that you look to what a reasonable person in the defendant's circumstances would have done. Objective versus subjective. It's objective versus subjective. But is your – so is it your position that it doesn't make any difference whether you're under 2255F4 or under the equitable doctrine of tolling because whether it's objective or subjective, the standard for due diligence is going to be effectively the same, or is one more generous to your client than the other? I think, Your Honor, that in this case the facts are so overlapping that it's difficult to make a significant distinction between the two. The objectives under the – You made the distinction. I'm trying to draw out from you why you think it's important. Why is that worth us thinking about? Is it better for you? Maybe I'll put it to you this way. Would you rather have us looking at 2255F4 or at the equitable doctrine, which gets you through to the goal you want more easily? Well, Your Honor, I think in this case the question is not what the result would be at the end. It's whether the facts conclusively establish that he's not entitled to relief under either of those standards, and that is such a low threshold that we easily meet it, whether it's an objective or a subjective standard. In this case, whichever standard is more difficult, they're both easily met. And returning to the F4 standard, to the extent that that's more difficult, to the extent that that's – I'm sorry, Your Honor. I thought equitable tolling was – we had case law saying it's the rare case. This should rarely be invoked. On the other hand, the subjective standard sounds like that might be a little easier to deal with. I don't know. I confess I find that confusing as well, Your Honor. I do think that in the circumstances of this case, if you compare it to NARA and laws and the other cases that look at the combination of an attorney's unprofessional conduct and a defendant who's laboring under mental illness and has a history of mental illness, I think that we meet the threshold, at least for an evidentiary hearing, to plumb the degree of that and the extent to which it interfered with his ability to make his filings. And the problem on equitable tolling is that the district court did not even acknowledge what Mr. Johnson pled in terms of his effort to reach out to his lawyer and his lawyer's lack of response. Got it. Thank you. Thank you. Okay. All right. Scan it. We'll have you back on rebuttal. Mr. Fisonic? Mr. Fisonic, you're doing double duty. I am, Your Honor. Saved mileage for the government. Very commendable. Thank you. May it please the Court, Christian Fisonic, on behalf of the United States. The government would point out the posture of this case. There was a motion to file an out-of-time 2255, and we have to look at that and address that issue. So are you saying that 2255B really doesn't have any application? I'm saying it doesn't because we have to look at United States v. Thomas first, which is the case out of this circuit I think in April of last year. And Thomas held for the first time in the Third Circuit that there exists a case or controversy for the district court to have jurisdiction to decide whether to extend the time to file a 2255. Well, that goes to the question of whether there needs to be a certificate of appealability, but does that get you past the semantic problem that we were kicking around with Ms. Gannett about in the end, does it matter whether you say it's a motion for an extension of time to file a 2255 or it's a motion for 2255 that the court's going to have to see as timely? The government makes the argument that in either case, no hearing is warranted. Well, I understand that's your bottom line. Right. I'm trying to get you to wrestle with whether we have to wrestle with 2255B. I don't think you do here. And I think under Thomas, the issue was this. Thomas filed three weeks before his one year was up that he wanted an extension of time to file his 2255. And he alleged that he was between prison transfers and he didn't have his legal materials and things like that, and the court denied that without a hearing. The underlying holding of this court was there's a case of controversy, the district court has jurisdiction to decide this issue, and in its discretion denied it without a hearing, and that was fine. So I would say that we start with the proposition that you don't automatically get a hearing on a 2255 extension or a 2255 that's untimely where you're going to allege equitable tolling. I don't think anybody's going to. Right. It's not automatic. Right. But when a petitioner files a motion, a 2255, 13 months, you know, out of time, saying my lawyer told me that he filed an appeal and attached below is a letter from my lawyer admitting that he forgot to do it, what happens then? Does the person get, the petitioner get his day in court? The petitioner, if he shows due diligence, we would argue, might get a hearing in court if there's a dispute of factual matter. Might? I thought I tried to give you the starkest form of hypothetical where it would be obvious that the person would get a day in court. That would be. If there's a dispute as to whether the motion was filed. So I think even the government can see that when counsel, through gross malpractice, fails to file an appeal and protect that person's rights, the person has a right to remedy that, correct? Correct. I understand your argument. So in this case, how could Judge Caputo possibly determine on this record whether or not Mr. Johnson had a viable claim of attorney misconduct or mental incapacity? Well, because that kind of puts the rabbit back in the hat, so to speak, because he has an untimely motion petition, however you want to characterize it, before the court. Just like the hypothetical I just gave you. That was untimely too. Right. That was untimely too. So he has to show due diligence that he's entitled to bring this before the district court. Right. And he claims, as part of his due diligence in his pro se motion, which, as you know, we need to construe liberally, he claims that he was contacting Bickley, correct? Correct. And the district court wrongly said he wasn't trying to contact his lawyer. I don't think the district court wrongly said that. I think what the district court said was he did not exercise the required due diligence for his underlying ground to fall one at a time. I thought at Appendix 89 the court said that Johnson never attempted to contact Bickley. I'm sorry, at 89 Johnson says, I did try to contact Bickley. Right. And then the court also wrongly, I think, said that Johnson took no action. And Johnson himself, even as a pro se litigant, pleaded, and there's some evidence to support his pleading, that he was requesting docket sheets. So it seems to me the district court has gotten two facts terribly wrong here. And on that castle of sand, how can the district court build a house that says, I'm not going to bring you into court to hear what you have to say about good cause or equitable tolling or any of those reasons why you might be late? Well, you can see the district court got facts wrong. It didn't get the beginning of the appeal time right, as the court pointed out. It was May and not April. If you start by saying you acknowledge that the court got things wrong, then isn't that kind of game over? Because how can you exercise discretion appropriately if some of your fundamental assumptions or understandings are erroneous? Well, I think the fundamental assumption as to when the time starts is not necessary here. But accepting, I'll repeat, nobody is arguing here that his application was timely. So the fact that the court counted doesn't really, that's neither here nor there for purposes of this argument. The thing that is in front of us is, did the district court abuse its discretion in saying that Mr. Johnson didn't do anything, he didn't exercise due diligence, he really didn't do anything to follow up when, in fact, there's evidence and he gave it to the district court, he attempted to put it in front of the district court, that he tried to get a hold of his lawyer, that his girlfriend was trying to get a hold of his lawyer, that he was unable to adequately assess what was happening on his own because of his medication issues and he offered a listing up of his medications. I mean, these seem like facts that, at a minimum, might prompt one to say, well, let's hear what you have to say and let's hear what Mr. Bickley has to say. How can we say no abuse of discretion if he's got the foundation wrong? Well, we could look at it and say, as we've argued in our brief, that you have to do more than bald assertions in this extraordinary circumstance because, call it what you may, either a 2255 extension or a compulsory. Right, and that's why a guy who sends in a petition that says, this is ridiculous, I'm an innocent man, let me out, doesn't get anywhere. Right. But here we have a man who says, I've had mental issues, I'm on a cornucopia of psychotropic drugs, my lawyer doesn't answer my calls, I've enlisted the help of my girlfriend. The litany of things Judge Jordan just said. How do you say that that's bare allegations? All of those allegations, it seems to me, go to... Bald, bald was the word, which I'm a little distressed about. Did none of them say bald anymore? Okay, I won't say bald anymore. I'm getting sensitive to that. Is there a real difference? Yeah. Okay, so I guess the point is, in light of all of those allegations, which it seems to me go to the heart of the question of, did you, Mr. Johnson, have a good reason why you were out of time, or are you just making stuff up, is precisely why a trial judge needs to say, come on in, and let's hear what you have to say, let's put Bickley on the stand. Did you talk to him or not? Did he call you? That's why we have evidentiary hearings, to get to the bottom of whether there was a reason why he was late or whether he should be forever barred. And I think this court made the point with my colleague that if you allow, maybe you don't have the extreme case where there's nothing, let's say a postcard written in purple crayon that says, I want a hearing here. I'm unjustly accused. You don't have that, but you have somewhere, as we would argue, on behalf of the government, closer to that. You're going to open. It's really an argument about use of an extraordinary remedy that should be scarcely utilized. Sure, it should be scarcely utilized. But, Mr. Personik, are you really saying that somebody who's got a documented history of mental psychotropic or psychoactive drugs, who proffers that, proffers affidavits from others who say, these are the things we've done to try to get a hold of this lawyer who won't respond to us, that that's near the purple crayon postcard circumstance? What would the government think is good enough to even get into court for a hearing? We're not talking about getting relief. We're talking about just getting the district court to listen to you and hear whether there's a factual dispute that ought to get untangled. What you see in the cases of, and I'll address the mental illness medication issue, as we have in our brief, just because you've dumped upon the district court a list of drugs that you're taking does not, if so facto, prove for equitable tolling under NAPA that you're going to receive this scarcely, rarely given remedy. As for the counsel, what do we have here? If you look at these affidavits, and there are two of them. Well, I don't want you to walk away from the medication issue that rapidly because I did pay attention to your footnote about the percentage of people who would be coming to court if it was just about medication. But hasn't he offered more than simply a statement that I've got medication? He's offered, for example, one of his affidavits was that part of his PSR that in 2005 he had these mental issues. That's not the relevant time period here. No, but is the government suggesting that he has to get an expert witness? Because if he says, here's the documentation of my mental illness, here's the kind of drugs I'm on, and I'm telling you how this affects me, when I'm on them, I can't think straight. When I'm off them, and I've been off them for a while, I've got better clarity. I understand better what's going on, but please pay attention to me because I didn't understand what was going on while I was on the drugs. You're saying that's not enough. What would be enough? Does he have to get a doctor's affidavit? What the government is arguing, first I'll answer your specific question after I tell you what we're arguing, is what Judge Caputo found, that you have to show, for lack of a better term, a nexus between your mental health issues and how they precluded you from exercising your 2255 rights. When you say you have to show it, he's offering his own, you know, lay testimony that I'm the one in this body, I can tell you how it's affecting my mind. This is how it's affected my mind. He's offered that, which is why I'm asking you, does your suggestion that that's not enough mean that for the government's point of view, you only get an expert witness? Let's go back to step one, following up on what Judge Jordan has said. Let's go back to step one a second. The question I've been trying to get you, and you've answered, and Ms. Gannon answered her side of it, is this motion, this pleading, whatever we're going to call it, this motion for leave to file 2255, is it covered by the provisions of 2255B? At the position, it's before Judge, at the time, it's before Judge Caputo. I would say that it is not specifically covered by the wording of the statute. If that's your position, if that's your position, how does Judge Caputo or any district court judge at that point make a determination as to whether or not enough has been alleged in the motion for leave to proceed that leave ought to be granted to file the 2255? I think that's a case-by-case determination, and you have to look at cases that we've cited in the brief, one of them being Zettelmaier, where you can't just have conclusory allegations or, as I said, a data dump to try to get back to your question, Judge Jordan, on the mental health issue. A couple of the things that the government has pointed out in its brief and argument is, number one, Judge Caputo says that you have to show a connection as to why this affected you. We would point out we have a dump of just a list of the medications he was taking. That doesn't tie things together. We have some statements we don't have, as the other cases say, that he was found. I've got to stop you when you say he just had a data dump. And then you get back to answering this question, but does the record not show him attempting to describe or saying to the court in the first letter he writes, I was on medication, I wasn't thinking straight. I mean, I can quote it for you if you want to get into it, but isn't that in there? Yes. So it's not just a list of medications, is it? No, it's his own statement. Okay, go back to my question. Well, but it's also his own statement, I mean, and maybe this is going to open the… Okay, go back to my question here. How does a district court decide the question of whether I should grant leave to proceed without getting into the specifics of what the statement says? Well, first I think this court will tell the district court from now on how to do it, but I think really we need your help. This is very difficult because I'll be honest with you, if I were arguing back in April of 2013, I would be telling this court, there's no case of controversy here because the one year had run and there's no pending criminal action before the court. It was posted. It was posted, so right. It's a really difficult question. I'm not sure any circuit has satisfactorily answered that question because I was going back to Judge Jordan's question. If you look at these cases on the counsel issue, they have letters and documentation, and there's the U.S. Supreme Court case of Holland where Holland found that his attorney didn't file an appeal and he instantly ran in and asserted his rights and had a filing. In other words, things that we don't have here. It seems to me that there's a lot of logistics here. Judge Hardiman earlier said he's concerned that a decision in this case is going to provide a ticket for an evidentiary hearing in an infinite number of cases. An evidentiary hearing is one thing. That means that the judge goes to a courtroom and takes counsel, but the important thing for the system, somebody needs to bring a defendant in. To bring a defendant in, it's just not going next door. You've got to send the marshals out to wherever to bring them. There are costs involved here. So if you're at the stage where this case was, is it necessary to have a hearing? Are red lights on my answer? You may answer. Thank you. I think it is not necessary to have a hearing at this stage, and that's what we've argued. Well, but even if we have a hearing, we don't need the prisoner there, right? C says a court may entertain and determine such motion without requiring the production of the prisoner at the hearing. Yeah, I don't think a hearing is required. If you look at one of the cases that the defendant has cited, I think it's law, there are other things. You can have affidavits. You can have depositions. You can have supporting documents. When the pleadings and the affidavits, et cetera, dust up a cloud, that's why the evidentiary hearing is needed, right? Putting my trial judge hat on, I don't know whether this man, Johnson, is in my court until I bring him into my court. That's one of the ironies, right,  It is. People file complaints. Defendants file answers saying you're barred by the statute of limitations. Well, the court just doesn't issue an order and say, I read the answer, get out. The court has to ascertain whether there really is an SOL problem. And here, even if we set aside the medication issue, let's pretend that's not part of the case, how do you get over the problem of the averment that his lawyer failed to file an appeal, and he took action, he was requesting docket sheets, he put his girlfriend into motion, and this trial judge made an error of fact in saying that he didn't do those things. How do you get around that? I will leave you with, we don't believe it's enough of a dust-up with an untimely petition to get into court to have a hearing based on what the record shows here. But your answer, in addition to that, the important point, I think, is your argument would be there isn't necessarily a need to have a hearing to decide this question. Correct. Let me ask a question if I might at last. I asked your opposing counsel this, and I'm interested in the government's position as well. They've taken the position that 2255F4 sets up an objective standard for deciding due diligence, that the equitable doctrine of tolling sets up a subjective standard for deciding due diligence. I wonder if the government's got a position on whether that's right or wrong, and if you agree it's right, whether that makes a practical difference because one standard is easier to meet than the other. The subjective standard would be easier to meet because the defendant would say, I think I'm entitled to equitable tolling because of such, such, and such. I think it has to be an objective standard, otherwise you have the floodgates kind of issue with every untimely petitioner coming in and saying, I believed like he did here. He said he didn't understand. He had to file within a year. Well, you know what? That's not the government's fault. That's not the court's fault. Mr. Fisonic, thank you very much. Thank you. And we'll have Ms. Gannett back. Ms. Gannett, we promised we wouldn't try to speak over you. I apologize again, Your Honor. That's okay. I do think that we're doing it again. We all can stand to be corrected in that regard. I do think the standard under B and the proper articulation of the standard under B is important to this case. I do think the standard under 2255B and the proper articulation of it is important here. And this Court has said in Booth that it's a relatively low threshold for the movants to meet. And to the extent that that applies here, it's important. But to the extent that it doesn't apply here, I think the standard that would be applied would not be significantly higher. If we sort of compare this to pleading standards in other contexts, when you create a question of fact, then further factual developments, when you allege a question of fact, further factual developments becomes warranted. What if we were to write an opinion that was somewhat agnostic on the question of evidentiary hearing being mandated here in light of all of the untrod ground that we're on now, that simply said on this record, having made a couple of errors of fact, it was an abuse of discretion for the judge to say that he was untimely. And then send it back, and then the trial judge will have to sort out what to do next. I think that on this record, further factual development is certainly warranted. We take the position an evidentiary hearing was warranted, but there is support in the case law, and we've cited some of those cases in our briefing. The Supreme Court's decision in Sanders, the Seventh Circuit's decision in Ryan, that an evidentiary hearing is not the only method of factual development. And you agree that the prisoner is not entitled to be present if the court decides that that's not required? That issue seems to be an open question, depending on what the factual issues are. Well, what about C? I mean, C seems fairly unequivocal. A court may entertain and determine such motion without requiring the production of the prisoner at the hearing. But here I think that Mr. Johnson's testimony might be required to resolve some of the factual issues. I think that gets back to my sort of original suggestion, which is I'm positing whether the prudent thing, although appellate courts I don't think have a habit of doing this, but the prudent thing here might not be to articulate sort of broad principles of law in this area, but rather to say on these facts it needs to go back for more fact development, leave it open-ended, and then you could argue to the trial judge, in this factual context, although C says the prisoner need not be present, you can't have sufficient fact development without bringing Mr. Johnson in and hearing what he has to say. I think that's a correct statement of the facts as we know them now. Because especially if he and Bickley are in a he said, he said, then. I think that's right. I think that's right. And I also think that it's important to recognize the government has made a big point of the fact that some of the factual averments by Mr. Johnson are not very specific with reference to dates and times and places, and that's true. But it's important to note that the cases to which his efforts are being compared are cases in which there were no allegations of limited cognitive ability or mental illness. Here we have a case that's more like this court's case in Ross where there are a combination of factors, and I think that complicates what the pleading standard is that should be required. In the cases that we cited under D4, there were more specific factual averments, but the averments that are made here do meet the threshold of Zettelmeyer. They do meet the threshold of Eichmann. There is support for them in the record, and although they may not be as good as the ones in Aaron and Townsley and Ryan, those petitioners were not laboring under the same problems that Mr. Johnson alleges that he's laboring under. Thank you. We thank you and we thank both counsel for excellent arguments on a relatively complex matter in the world of habeas, and we'll take the matter under advisement.